**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**17-CR-06016-CJS-JWF**
**17-CR-06017-CJS-JWF**

**UNITED STATES OF AMERICA**

    **-vs-**

**NOTICE OF MOTION**

**RICHARD LEON WILBERN**

| | |
|---|---|
| **MOTION BY**: | Anne M. Burger, Assistant Federal Public Defender, Attorney for Richard Leon Wilbern. |
| **DATE, TIME & PLACE**: | March 2, 2018 at 10:00 a.m. before the Honorable Jonathan W. Feldman, U.S. Courthouse, Rochester, New York. |
| **SUPPORTING PAPERS**: | Affirmation of Anne M. Burger, affirmed on February 1, 2018 and all the prior pleadings and proceedings had herein. |
| **RELIEF REQUESTED**: | An Order granting the relief requested herein. |

Dated:      February 1, 2018
                Rochester, New York

                              s/Anne M. Burger
                              Anne M. Burger
                              Assistant Federal Defender
                              28 East Main Street, Ste. 400
                              Rochester, New York 14614
                              anne_burger@fd.org
                              Attorney for Richard Leon Wilbern

TO:    Douglas Gregory, AUSA

## TABLE OF CONTENTS

**Page**

I.      PROCEDURAL HISTORY ........................................................................................ 1

II.     FED.R.CRIM.P. RULE 12 COMPLIANCE ................................................................2

III.    MOTION RELATING TO FED.R.CRIM.P. RULE 16 DISCLOSURE.............................................2

IV.     MOTION RELATING TO DISCLOSURE OF *BRADY/GIGLIO* MATERIAL......................................8

V.      MOTION RELATING TO DISCLOSURE OF WITNESS STATEMENTS .......................................12

VI.     MOTION RELATING TO DISCLOSURE PURSUANT TO FED.R.EVID. 404(B), 608 & 609...............14

VII.    MOTION RELATING TO PRESERVATION OF ALL ROUGH NOTES .........................................15

VIII.   MOTION SEEKING LEAVE TO MAKE FURTHER MOTIONS ...................................................16

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

                                    **17-CR-06016-CJS-JWF**

**UNITED STATES OF AMERICA**         **17-CR-06017-CJS-JWF**

         **-vs-**                             **AFFIRMATION**

**RICHARD LEON WILBERN**

───────────────────────────

        Anne M. Burger, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

        I am an attorney licensed to practice law in the State of New York and the United States District Court for the Western District of New York, and I represent Richard Leon Wilbern.

        I am familiar with this case by reasons of the defense's investigation of this matter, conversations with my client and others, and the defense review of the discovery material provided to date by the government.

        This affirmation is submitted in support of various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

### I.    PROCEDURAL HISTORY

Indictment 17-CR-6017

        On September 27, 2016, Richard Wilbern was arrested in connection with a criminal complaint charging him with a Credit Union Robbery, Resulting in Death, in violation of 18 U.S.C. §§2113(a) and (e ) and Possession and Discharge of a Firearm in Furtherance of a Crime of Violence, Resulting in Death, in violation of 18 U.S.C. §§924(c)(1)(A)(iii) and (j)(1).  18 U.S.C. §2 liability was also alleged. On December 15, 2016, the Government announced that it would not seek the death penalty against Mr.

Wilbern.  On January 24, 2017, Mr. Wilbern was indicted in connection with the same violations.  The Indictment, filed under case number 17-CR-6017, however, omitted any reference to 18 U.S.C. §2 liability.

Indictment 17-CR-6016

On November 7, 2016, Richard Wilbern was charged in connection with a criminal complaint alleging a single violation of 18 U.S.C. §§922(g)(1) and 924(a)(2), Felon in Possession of Firearms and Ammunition.  On January 24, 2017, Mr. Wilbern was indicted in connection with the same allegations as had been referenced in the underlying criminal complaint.

## II.    FED.R.CRIM.P. RULE 12 COMPLIANCE

The purpose of FED.R.CRIM.P. RULE 12(b)(4) is to alert the defense to the existence of evidence the government intends to introduce in its case-in-chief at trial that may be subject to suppression under FED.R.CRIM.P. Rule 12(b)(3)(C).

On April 28, 2017, the Government filed an initial Rule 12(b)(4) notice.  *See* Document 25. Subsequently, the Court ordered the Government to file an updated FED.R.CRIM.P. Rule 12(b)(4) notice; the notice was filed on December 29, 2017.  *See* Document 35.  The two notices are largely the same.

## III.    MOTION RELATING TO RULE 16 DISCLOSURE

Introduction

In late November of 2016, the Government provided an initial disclosure of discovery material in the form of two to three bankers' boxes of printed documents.  The parties conducted a "meet and confer" regarding the discovery process in January of 2017.  Additional discovery disclosures were provided on a rolling basis with the largest document disclosures provided in late March and late November of 2017. To date, multiple terabytes of data have been provided on multiple hard drives, dvds and compact discs. The Government provided notice that it intends to rely upon this evidence in its case-in-chief at trial.  At

present, the defense has requested that the Government confirm whether certain additional discovery materials exist and, if so, that they be disclosed.

The general categories of requested information include various reports, documents, notes, color photographs, and electronic data.  At the Government's suggestion, a largely verbatim list of such pending requests is being provided to the Court.  Due to the inclusion of names of witnesses and other civilians, it is being provided to the Court and counsel under separate cover rather than being publicly filed in CM-ECF.

Regarding the seized iPhone which has been the subject of discussion at status conferences, at last report, the device has not yet been unlocked.

The defense expects to continue to update its requests to the Government on an on-going basis.

<u>Discovery Demand</u>

The Government's formal FED.R.CRIM.P. Rule 16 obligations are triggered by a defense request. As a result, the defense hereby requests the following:

The substance of any oral, written or otherwise recorded statement made by Richard Wilbern. FED.R.CRIM.P.  Rule 16(a)(1)(A) and (B)(i).  The Government has indicated it intends to rely on previously-provided video recorded statements made during questioning by the FBI, and audio recorded calls to the FBI Hotline.  The defense has been provided with these recordings.  The Government has not noticed the existence of a written statement pursuant to FED.R.CRIM.P.  Rules 16(a)(1)(B)(i) and (a)(1)(B)(ii).  To the extent additional materials exist or are obtained, further disclosure is requested.

A copy of Richard Wilbern's prior criminal record.  Rule 16(a)(1)(D).  The Government has provided materials relating to Mr. Wilbern's criminal record.  To the extent additional materials exist  or are obtained, further disclosure is requested.

All books, papers, documents, data, photographs, tangible objects, buildings or places within the Government's possession, custody, or control, which the Government intends to use in its case-in-chief at

trial, or which were obtained from or belong to Richard Wilbern. Rule 16(a)(1)(E). The Government has

permitted the inspection and photographing of a considerable quantity of physical evidence, papers and

documents. Outstanding are the following requests, in addition to those provided to the Court under

separate cover referred to above:

      -Copy of a physical extraction of the iPhone, which is presently in FBI custody;

      -Information including documents, scripts and photographs relating to the questioning of witnesses and display of surveillance photographs in an effort to obtain identifications of Richard Wilbern as the perpetrator;

      - Access to the scene for purposes of the defense's investigation.

      Due to the volume of discovery and the defense's on-going investigation, additional requests are

anticipated.


Identification Information

      The defense has requested disclosure of information and materials relating to the Government's

search for potential witnesses to offer opinion testimony in the form of in-court identifications of Richard

Wilbern as the perpetrator. The Government has revealed that these potential trial witnesses were not

witnesses to the offense. Instead, it has disclosed that law enforcement displayed still photographs from

the crime scene video to individuals who are alleged to be familiar with Mr. Wilbern. It asserts that

"[e]ach and every person identifying the defendant as the individual depicted in the photograph has

demonstrated a clear and independent basis upon which [to do so]." Exhibit A to Government's

December 29, 2017, Rule 12(b)(4) notice.

      The defense has serious concerns regarding the suggestiveness of these identification procedures

and the resulting unreliability of any in-court identifications. The Government disclosed that Mr. Wilbern

was identified following an early 2016 press conference based upon "enhanced" crime scene photographs.

According to the discovery provided thus far, no one identified or even mentioned Richard Wilbern as a

potential suspect from the time of the offense in 2003 until the unnamed "tipster" contacted law

enforcement in early 2016.  In light of the following issues, the Court should direct the Government to provide the material requested above.

<u>The surveillance images used in the identification procedures are of poor quality</u>:

In late 2015, a FBI facial recognition analyst attempted to compare the still surveillance photographs from the crime scene with a photograph of another suspect.  He concluded that, "[d]ue to a lack of visible detail in the facial features depicted [in the surveillance images] [the suspect] could neither be identified nor eliminated as being the questioned individual."  Lead 1045 at p. 3.  Nor was the analyst able to use the surveillance video tape itself due to its "degraded quality."  *Id.*

In addition, two of the actual eye-witnesses to the crime noted that the surveillance images of the perpetrator distorted his actual appearance.  One eye-witness observed that the images made the perpetrator overall look physically chubby when he wasn't.  The other eye-witness told law enforcement that the surveillance images made the perpetrator's cheeks appear chubbier than they were in reality.

<u>Law enforcement induced or attempted to induce the desired identifications</u>:

Prior to the early 2016 press conference, no one, including the Government's newly obtained identifying witnesses alerted the police to their view that Richard Wilbern resembled the suspect.  Yet, locally, there was a sizable cash reward and media coverage devoted to the crime and the fact that law enforcement had been unsuccessful in making an arrest.  From 2003 until the press conference in 2016, flyers, billboards, television and the printed media repeatedly displayed the still surveillance images in Monroe County.  The images were also circulated on law enforcement related national television on at least two occasions.  Yet, these individuals who now claim to recognize these images as pictures of Richard Wilbern never came forward.

Moreover, the defense investigation revealed that, during at least some of the witness interviews, law enforcement – not the potential witnesses – first suggested Richard Wilbern's name in the context of the interview.

To make matters worse, several of the individuals law enforcement targeted to identify Mr. Wilbern from the surveillance photographs had no recent memory of his appearance because they had not seen him in many years.

In light of this information, the Government should provide the sought after materials.  If the Government declines to do so, the Court should order that the materials be provided to enable the defense to frame motions seeking suppression and exclusion of these identification procedures and any resulting in-court identifications, as the product of suggestive and/or unreliable identification procedures.

Examinations, Tests, and Expert Testimony

The defense requests disclosure of all requests for and results of any physical or mental examination, or any scientific test or experiment undertaken in connection with the investigation or prosecution of this matter.  Rule 16(a)(1)(F).  The defense has received material from the Government in this category.  Several requests are pending and are contained within the list of requests provided to the Court.

Pursuant to FED.R.CRIM.P. Rule 16(a)(1)(G), the defense requests that the Government provide the identity of each expert witness it intends to call at trial and each of the witnesses' qualifications coupled with a written summary of his/her expected testimony, the ground(s) for each opinion and all related reports or memoranda.  Rule 16(a)(1)(G); Fed. R. Evid. 702, 703, 705.  The Rule's Advisory Committee notes state that, "[w]ith increased use of both scientific and nonscientific expert testimony, one of counsel's most basic discovery needs is to learn that an expert is expected to testify."  1993 Amendment Advisory Committee note (citations omitted).   The Rule meets this need by "first, requiring notice of the expert's qualifications."  *Id.*  The rule also requires disclosure of a summary of the expert's

expected testimony in order to "permit more complete pretrial preparation by the requesting party" and a

"summary of the bases of the expert's opinion."  *Id.* (citations omitted).

The Government has set forth only three general categories of expert testimony it intends to offer

at trial:  DNA, height analysis and fingerprint evidence.  The Government has not provided the identities

of its expert witnesses, their qualifications, a summary of their expected testimony and a summary of the

bases of their opinions.  Instead, the disclosure is limited to the following:

> The government intends to offer expert testimony regarding DNA evidence obtained
> from various objects, including an office chair and umbrella located in the office of
> XFCU employee Felicia Wyatt.  The government will seek to admit expert evidence of
> all DNA testing conducted by the Monroe County Crime Laboratory and the Office of the
> New York City Chief Medical Examiner.  All notes, reports and conclusions associated
> with the analysis have been provided in discovery.  Additional notice of expert testimony
> will be provided prior to trial, including a *curriculum vitae*.
>
> The government further intends to offer expert evidence relating to the attempt to obtain
> fingerprint evidence from various locations inside the Xerox Federal Credit Union, as
> well as from tangible evidence removed from the scene.  All reports have been disclosed
> in discovery.

*See* Document 35, Exhibit A (emphasis in original).

The defense requests that the additional material be provided in compliance with FED.R.CRIM.P.

Rule 16(a)(1)(G).  To the extent that the Government's responses are contained within specific materials

previously provided to the defense, it is respectfully requested that the Government identify by bates

number which documents are responsive to these specific Rule 16 requests from among the tens of

thousands of previously disclosed pages provided in voluntary discovery.

To the extent no responsive materials exist for a particular category, the defense requests that the

Government advise of that fact.  And for those responsive materials which do exist, but which the

Government takes the position should not be produced at this time, it is requested that the defense be

specifically advised of the existence of those materials so that the defense may seek relief from the Court.

7

In addition, the defense requests that the Government confirm that these are the only areas of expected expert testimony. The discovery materials provided thus far include testing in the following areas:

Facial recognition technology
DNA testing of wig, glove
DNA testing regarding other suspects
Analysis of trace/fibers of wig and glove
Cellular phone and computer forensics
Crime scene reconstruction
Cellular site information
Creation of 'enhanced' digital images
Forensic audio, video and image analysis
Polygraph testing
Metallurgical analysis

The Government should simply confirm that it does not intend to rely upon expert testimony in these – or any other – areas so that the defense is able to efficiently allocate its resources. To the extent the Government intends to rely upon additional experts, the defense requests confirmation, along with compliance with FED.R.CRIM.P. Rule 16(a)(1)(G).

IV.   MOTION RELATING TO DISCLOSURE OF *BRADY/GIGLIO* MATERIAL

Introduction

The Court is empowered to order disclosure of *Brady* material at any time as a matter of "sound case management." *United States v. Nogbou*, 2007 WL 4165683 at *3-*4 (S.D.N.Y. 2007), *United States v. Giffen*, 379 F.Supp.2d 337, 347 (S.D.N.Y. 2004), *see also United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) (in the context of *Brady*, refusing to address the "scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management.") Early disclosure of *Brady* material reduces the risk of delay based on the need to follow up on important evidence or, following a conviction, the need for a new trial in light of what would otherwise have been an avoidable *Brady* violation.

In light of the key role that *Brady* material plays in affording effective representation, other district courts have adopted local rules requiring pre-trial disclosure of *Brady* material. In the Northern District of New York, *Brady* material must be disclosed within 14 days of arraignment or by another date

8

set by the court.  *See* N.D.N.Y. Local Rule of Criminal Procedure 14.1(b)(2), available at

http://www.nynd.uscourts.gov/sites/nynd/files/local_rules/2018%20Draft%20v1%20Local%20Rules%20

Final.pdf (accessed February 1, 2018), see also D.Mass. Local Rule 116.2(b)(1) (requiring disclosure of,

among other things, information tending to directly negate defendant's guilt, within 28 days of

arraignment or by any alternate date set by the court unless Government invokes declination procedure),

available at http://www.mad.uscourts.gov/general/pdf/LC/2017%20LOCAL%20RULES%20-

%20effective%20July%202017.pdf (accessed February 1, 2018).

       The defense has identified and requested certain *Brady* materials in the document provided under

separate cover to the Court.  Because the Government has yet to respond to these requests, its position

remains unclear.

       One category of material is exculpatory identification information.  Specifically, law enforcement

interviewed potential witnesses who did not identify Richard Wilbern as the perpetrator depicted in the

surveillance photographs.  As noted above, law enforcement attempted to gather witnesses who knew Mr.

Wilbern personally and were willing to identify him as the individual depicted in the surveillance video.

The defense investigation has revealed that several individuals who were interviewed by law enforcement

on the day of Mr. Wilbern's arrest, and thereafter, did not identify the perpetrator depicted in the

surveillance video as Mr. Wilbern.  The Government has not disclosed any information about these

witnesses – or any others who have likewise cast doubt on the identification of Mr. Wilbern as the

perpetrator.

       In light of this information, the Court should enter an order requiring disclosure of *Brady*

materials by a date certain – including the requests provided to the Court under separate cover; such an

order will benefit the defense, the Government and the Court.  The defense proposes that the Court

identify a date certain by which *Brady* materials must be provided along with an understanding that

additional, newly obtained *Brady* materials be provided to the defense immediately on a rolling basis.

With respect to non-*Brady* impeachment and Jencks/3500 materials, the defense requests that the Court issue an order that these materials be provided before a scheduled trial date, as discussed below in the context of Jencks material.

The Court should issue the requested *Brady* material scheduling order in light of the importance of any potentially exculpatory information, and the sheer volume of the discovery provided thus far, which spans a 15-year investigation.  In addition, it is anticipated that the Government's case at trial will draw on witnesses from outside of the Rochester area and potentially outside of the United States.  As a matter of "sound case management," it is crucial that *Brady* evidence be produced with enough time for the defense to digest and investigate it.  Given the volume of material at issue here, eve of trial disclosures will be extraordinarily problematic if, requiring the defense to expend trial preparation resources on locating and interviewing potentially exculpatory witnesses and, in turn, requiring a delay in the proceedings.  Any delay requested shortly before or during trial will inconvenience the Court, far flung witnesses, and jurors.  In short, in this case, early disclosure is necessary to avoid prejudice to the defense and the potential waste of judicial time and resources.

In determining the defense's motion, the Court should carefully distinguish between *Brady* and non-*Brady* witness impeachment material which would be subject to the Jencks Act.  Where a witness's reliability may be determinative of guilt or innocence, material impeaching that witness's credibility constitutes *Brady* material.  *Giglio v. United States*, 405 U.S. 150, 154 (1972), *Fuentes v. Griffin*, 829 F.3d 233 (2d Cir. 2016).

In addition, to the material previously requested, the defense requests the following:

- Information involving a misidentification or inconsistent account regarding any identification of Richard Wilbern as the perpetrator of any crime charged and information indicating failure on the part of any individual to identify Wilbern as the perpetrator of the crime charged.

- Information that evidence which may be used by the Government at trial was illegally or improperly obtained, or was obtained even partially as a result of the improper acquisition of some other evidence or information.

- Evidence in the Government's possession, or which could be reasonably acquired by the government by due diligence, which would be favorable to defendant on the issues of guilt or sentencing under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Kyles v. Whitley*, 514 U.S. 419 (1995).

- The names of all persons who have knowledge of the case and were interviewed by law enforcement or Xerox Security in connection with the case, if such knowledge is potentially exculpatory or mitigates the allegations.

- Evidence in any form that may have impaired any government witness's ability to observe or accurately recall events.

- Evidence in any form indicating that any prospective government witness gave false, misleading, or contradictory information regarding the charges at bar to law enforcement, their agents or informants.

- Evidence in any form indicating that any prospective government witnesses have given statements contradictory to one another, including inconsistent attorney proffers whether or not the inconsistency is memorialized in any document.

- Criminal records of any prospective government witnesses and information reflecting that the witnesses have perpetrated immoral, vicious or criminal acts, pursuant to *Giles v. Maryland*, 386 U.S. 66 (1967).

- Information which tends to exculpate, exonerate or mitigate defendant's involvement in the allegations in the indictments or to impeach a prosecution witness.  *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998); *Tate v. Wood*, 963 F.2d 20 (2d Cir. 1992).

- Information that negatively affects the credibility of any government witnesses, including prior criminal records, inconsistent statements, 'deals' or immunity agreements with any state or federal government personnel, and any benefits of any kind the witness may receive in return for cooperation including leniency, favorable treatment or recommendations, assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, tax, immigration, naturalization, administrative or other dispute with the government or with any other authority or with any other parties, relief from forfeiture, payments of money, rewards or fees, witness fees, provision of food, clothing, shelter, transportation, legal services or other benefits.  The defense requests that the Government affirmatively investigate whether any such material exists such as by asking the agents and witnesses involved in the investigation and prosecution of the indictments regarding the existence of such material.  *Avellino*, 136 F.3d 249; *United States v. Payne*, 63 F.3d 1200 (2d Cir. 1995).

- All threats, express or implied, direct or indirect, or other coercion made or directed against any witness, including criminal prosecutions, investigations or potential prosecutions which could be brought against the witness, probationary, parole, deferred prosecution or custodial status of the witness and any civil, tax, administrative or other pending or potential legal disputes involving the witness or over which the prosecution has real, apparent, or perceived influence.

- Evidence that a government witness is a regular user of a controlled substance.

11

- Evidence that a government witness was under the influence of any type of intoxicant or controlled substance at the time of the alleged offenses, at the time of an identification of Mr. Wilbern or at any time relevant to the Indictments.

- Evidence that a government witness suffers, or at any time suffered, from mental illness or other mental condition which might affect the accuracy, perception, or comprehension with respect to the allegations or their testimony.  In addition, any evidence that a government witness sought or received professional treatment for such mental illness or mental condition.

The information requested should include all evidence which may be favorable to the defendant and material to the issue of guilt or punishment, or bears upon and could reasonably weaken or affect any evidence proposed to be introduced against the defendant by the prosecution.  This request includes information which would tend to show that defendant may have committed the offenses because of coercion or duress, or while suffering from a reduced mental or emotional capacity or that defendant was a minimal or minor participant in the offenses.

The unique factors in the case at bar noted above render the requested *Brady* order crucial as a matter of sound case management. Accordingly, the defense requests that the Court issue an order setting a date certain by which the Government must provide all *Brady* materials and that additional, newly obtained *Brady* materials be provided to the defense immediately upon discovery.  With respect to non-*Brady* impeachment and Jencks/3500 materials, the defense requests that the Court order these materials to be provided before a scheduled trial date as set forth below.

**V.      MOTION RELATING TO DISCLOSURE OF WITNESS STATEMENTS**

The defense moves for early disclosure of witness statements pursuant to 18 U.S.C. § 3500, also known as the"Jencks Act," and Fed.R.Crim.P. 26.2.  Mr. Wilbern is entitled to each witness statement after the witness has completed his or her direct testimony.

Pursuant to Fed.R.Crim.P. 26.2, the Jencks Act is applicable to pre trial suppression hearings, sentencing hearings, revocation or modification of supervised release and probation hearings, detention hearings and preliminary examinations.

The defendant moves for an order requiring production of Jencks Act materials, namely all statements and reports in the possession of the United States which were made by government witnesses or prospective government witnesses and which relate to the subject matter about which those witnesses may testify, as per the Jencks Act, 18 U.S.C. § 3500, and Fed.R.Crim.P. 26.2.  Under the Jencks Act and Fed.R.Crim.P. 26.2, a statement is defined as:

    a.   a written statement made by said witness and signed or otherwise adopted or approved by him;

    b.   a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

    c.   a statement, however taken or recorded, or a transcription thereof, if any, made by a witness to a grand jury.

18 U.S.C. 3500(e); Fed.R.Crim.P. 26.2(f).  Also falling under this definition are:

    a.   statements which fairly and fully reflect, without distortion, made to a government agent by a witness, *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995);

    b.   Any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local, and other investigations whether or not the contents thereof have been incorporated in official records;

    c.   Any notes and memoranda made by government counsel during the interview of any witness(es) intended to be called by the government in their direct case.  *Goldberg v. United States*, 425 U.S. 94, 101 108 (1976); and

    d.   All surveillance reports made or adopted by a witness.  *United States v. Petito*, 671 F.2d 68, 71 (2d Cir. 1981).

In addition to avoiding unnecessary delays, sufficient pre-trial delivery of Jencks material also ensures that Mr. Wilbern's fundamental right to a fair trial and due process rights are safeguarded.

Although the Act does not provide for early disclosure of Jencks material, a panel of the Second Circuit Court of Appeals has noted that early disclosure of Jencks material benefits all parties:  the defense, the government and the court.  *United States v. Percevault*, 490 F.2d 126, 132 (2d Cir. 1974).

13

"Sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial." *Id.*


**VI.     MOTION RELATING TO DISCLOSURE PURSUANT TO FED.R.EVID. 404(B), 608 & 609**


A.  FED.R.EVID. 404(b)

The Government has provided discovery relating to prior criminal convictions of Mr. Wilbern. However, pursuant to FED.R.CRIM.P. 12(b)(4), (d)(1) & (2) and FED.R.EVID. 104(a) and 404(b), the defense requests that the Government provide specific notice of which convictions and/or prior bad acts it intends to seek admission of under the FED.R.EVID. 404(b).  In addition, the defense requests that the Government state for what purpose it will seek admission of the evidence such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident or some other purpose.

In addition, the defense requests that the Court direct the Government by a date certain to provide specific notice of which convictions and/or prior bad acts it will seek to admit and for what purpose under FED.R.EVID. 404(b).

The defense should be put on notice as to the exact nature of this evidence, the supporting evidence and/or documents, and the theory upon which the government asserts that admissibility rests.  If provided with notice prior to trial, the defense can file appropriate motion(s) *in limine* and afford the Court the occasion to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence offered by the prosecution.

The pretrial determination of this evidentiary question will serve the smooth operation of the trial, eliminate possible extraneous objections and assist both the government and defense counsel in the presentation of evidence.

B.  FED.R.EVID. 608 and 609

14

The defense also requests that the Government, pursuant to FED.R.EVID. Rules 608 and 609, disclose pre-trial any and all evidence the government intends to use to impeach Mr. Wilbern's credibility if he should choose to testify.

In addition, the defense requests that the Court direct the Government to provide this information to the defense on a date certain prior to trial.  The Second Circuit has suggested that this information should be produced at this stage in the proceedings.  *See United States v. Avellino*, 136 F.3d 249 (1998). In the event the government intends to use such evidence, the defense requests a pretrial hearing to determine its admissibility.  Pretrial disclosure of this information will minimize the risks of unnecessary delays.

### VII.    MOTION RELATING TO PRESERVATION OF ALL ROUGH NOTES

The defense moves the Court for an order requiring all government agents and officers who participated in the investigation to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records.  This motion is made so that the trial court can determine whether disclosure of the notes is required under *Brady*, *Agurs*, *Giglio*, the Jencks Act (18 U.S.C. § 3500), Fed.R.Crim.P. 26.2, and/or the Fifth and Sixth Amendments of the United States Constitution.

This motion puts the government and its agents on notice that, from this point on, any and all rough notes referred to above should be preserved.  Any destruction of notes after this request for preservation cannot be claimed to have been in good faith.  *See United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989); *United States v. Elusma*, 849 F.2d 76  (2d Cir. 1988); *United States v. Sanchez*, 635 F.2d 47 (2d Cir. 1980); *United States v. Bufalino*, 576 F.2d 446 (2d Cir. 1978).

The defense also requests that this Court direct the government to preserve notes made by government witnesses, including local authorities, in the event they later became discoverable as either

15

the defendant's statement, or that of another witness. *United States v. Scotti*, 47 F.3d 1237. If it is unclear whether such notes are subject to discovery, the Government should submit them to the Court for an *in camera* determination to determine whether they qualify as witness statements. *United States v. Scotti*, 47 F.3d at 1249.


### VIII.  MOTION SEEKING LEAVE TO MAKE OTHER MOTIONS

The defense respectfully moves this Court for an Order allowing it to make further and additional motions which may be necessitated by due process of law, by the Court's ruling on the relief sought herein, by additional discovery or *Brady* material provided by the Government or investigation by the defense, and/or by any information provided by the Government in response to the demands contained herein.

The specific requests contained in this motion are not meant to limit or preclude future requests by the defense for other, further relief from this Court as appropriate.


Dated: February 1, 2018
       Rochester, New York

                                   Respectfully submitted,



                                   s/Anne M. Burger
                                   Anne M. Burger
                                   Assistant Federal Public Defender
                                   28 E. Main Street, Suite 400
                                   Rochester, New York 14614
                                   585-263-6201
                                   Anne_Burger@fd.org
                                   Attorney for Richard Leon Wilbern


TO:    Douglas Gregory, AUSA