# Professor Roy D. Simon
Distinguished Professor of Legal Ethics Emeritus
205 West End Avenue – Suite 8N
New York, New York 10023

Licensed to Practice Law in New York

Phone: (607) 342-0840                                    E-mail: Roy.Simon@Hofstra.edu

June 21, 2018

Anne M. Burger, Esq.
Assistant Federal Public Defender
Federal Public Defender's Office   WDNY
28 E. Main Street, Suite 400
Rochester, New York 14614

Re: Conflict Analysis

Dear Ms. Burger:

At the request of the Honorable Charles J. Siragusa, United States District Judge for the Western District of New York, your office has retained me to analyze a conflict of interest that is currently before Judge Siragusa. This letter contains my analysis. I am rendering my services pro bono, without any charge.

## Factual Background

Your office has already sought and received an informal (i.e., unpublished) opinion from the Chair of the New York State Bar Association Committee on Professional Ethics, dated June 6, 2018. (I have served on that committee continuously for the past twenty-three years, but I had no involvement whatsoever in writing the informal opinion to your office.) I will assume the truth of the same facts that the ethics committee used as the basis for its opinion. The ethics committee understood those facts to be as follows:

> The Federal Public Defender's Office for the Western District of New York in Rochester (the "Rochester FPD") represents Client A in defense of robbery/murder charges pending in the U.S. District Court, while another office of the same Federal Public Defender's Office, located in Buffalo (the "Buffalo FPD"), represents Client B in a habeas proceeding pending in the U.S. Court of Appeals for the Second Circuit. The matters are unrelated to each other. [redacted]

Your email explains that the physical files for the two cases are kept in different offices; that the Rochester FPD has never met Client B, nor reviewed his physical or electronic file; and that the Buffalo FPD has never met Client A, nor reviewed his physical or electronic file.

You say that, if the Court permits this conflict to be waived, and both clients are willing to waive it, the Buffalo FPD would seek to withdraw from its representation of Client B to eliminate the ongoing conflict. If this motion were granted, the Buffalo FPD would create a "screen" between Client A's attorneys (and other staff members working on his case) and any information obtained by virtue of Client B's representation by the Buffalo FPD.

I add two additional facts. One additional fact is that both Client A and Client B were represented and advised by so-called *Curcio* counsel, who are independent lawyers, unaffiliated with your office, advising Client A and Client B solely on the conflict of interest questions addressed in this letter. After receiving advice from *Curcio* counsel, Client A and Client B each personally appeared before the Court, on the record, with *Curcio* counsel, and each executed a signed waiver of the conflict. The other additional fact is that Buffalo FPD has obtained Client B's informed consent to withdraw from representing him on his appeal to the Second Circuit, and Buffalo FPD has in fact filed a motion in the Second Circuit to withdraw. (That motion remains pending.)

## My Qualifications as an Expert on Professional Conduct

This section summarizes my qualifications as an expert in the field of legal ethics and professional responsibility. (My current *curriculum vitae* is attached to this letter.)

I was the Howard Lichtenstein Distinguished Professor of Legal Ethics at Hofstra University School of Law from 2003 until I resigned from my position at Hofstra effective September 1, 2011. I am admitted to practice law and am an active member of the Bar in New York in good standing. I frequently advise lawyers in New York and elsewhere regarding issues of professional conduct, conflicts of interest, legal malpractice, fiduciary duties, and related issues. I sometimes serve as an expert consultant and expert witness regarding those issues.

I received my Bachelor of Arts degree cum laude in 1973 from Williams College in Williamstown, Massachusetts. I received my J.D. in 1977 from New York University School of Law, where I served as Editor-in-Chief of the New York University Law Review. After graduating from law school, I clerked for the Hon. Robert R. Merhige, Jr. in the United States District Court for the Eastern District of Virginia for one year, then practiced law for five years in Chicago before becoming a full-time law professor.

Since 1986 I have devoted virtually all of my scholarly time and effort to the field of professional responsibility (often called "legal ethics"). I am the author or co-author of three books on legal ethics, including:

- SIMON'S NEW YORK RULES OF PROFESSIONAL CONDUCT ANNOTATED (Thomson Reuters Westlaw) (nineteen editions since 1995). The 2017 edition was published in June 2017, with co-author Nicole Hyland.

- REGULATION OF LAWYERS: STATUTES AND STANDARDS (with two other professors) (Wolters Kluwer) (twenty-nine editions since 1989). The 2018 edition was published in December 2016.
- LAWYERS AND THE LEGAL PROFESSION: CASES AND MATERIALS (LexisNexis, 4th ed. 2009) (two editions since 1995). (I am the lead author; two other professors joined in 1998 as co-authors).

From April 1998 through November 2011, I published an article virtually every month (more than 160 articles in total) in the New York Professional Responsibility Report, a monthly newsletter with articles of interest to lawyers who practice in New York. (The newsletter ceased publication shortly after the publisher's death in November 2011.) Since about 1991, I have published a column entitled "Developments in the Regulation of Lawyers" each spring and/or fall in the newsletter of the Professional Responsibility Section of the Association of American Law Schools ("AALS"), a publication circulated primarily to other law professors who teach professional responsibility courses.

I was a full-time professor in the law school at Washington University in St. Louis for nine years, from 1983 to 1992, receiving tenure in 1989. I joined the faculty of Hofstra University School of Law with tenure in 1992. From 1985 through 2009, I taught a law school course in professional responsibility for lawyers at least once each year (a total of about thirty-five times). I resigned from Hofstra in 2011 and now concentrate fully on studying, writing about, and consulting about professional responsibility for lawyers.

I spend a substantial amount of time in bar association activities relating to legal ethics in New York State. My present and past positions include:

- Co-Chair (since 2017), Chair (2014-2017), Chief Reporter (since 2003), and member (since 2000) of the New York State Bar Association's Committee on Standards of Attorney Conduct ("COSAC"), which monitors and proposes changes to the New York Rules of Professional Conduct and other provisions regulating New York lawyers.
- Member (1995-present) and former Chair (2008-2011) of the New York State Bar Association Committee on Professional Ethics. In January 2015, the Committee presented me with the Sanford P. Levy Award to recognize a lifetime of achievement for publications in the field of legal ethics.
- Member (1993-2012) and former Chair (1996-1998) of the Nassau County Bar Association Professional Ethics Committee.
- Member (2005-2008) of the New York City Bar Committee on Professional Responsibility.
- Member (2002-2005 and 2012-2015) of the New York City Bar Committee on Professional and Judicial Ethics.
- Member (1995-1998) of the New York City Bar Committee on Professional Discipline.
- Member (2005-2006) of the New York City Bar's Task Force on the Role of the Lawyer in Corporate Governance (a special task force that has completed its work).

Anne M. Burger, Esq. 4
June 21, 2018

## Analysis and Opinions

The fact that the office of the Federal Public Defender W.D.N.Y. simultaneously represents both Client A and Client B creates a conflict of interest within the meaning of Rule 1.7(a)(1) of the New York Rules of Professional Conduct (the "Rules"), because representing both Client A and Client B involves the Federal Public Defender W.D.N.Y. in representing "differing interests."  ████████████████████████████████████████ Thus, the lawyer representing Client A could not personally represent Client B, and vice versa and under Rule 1.10(a), each lawyer's conflict is imputed to the entire FPD in the Western District of New York, including both the Rochester FPD and the Buffalo FPD.

However, under Rule 1.7(b), a lawyer may represent a client despite a conflict of interest under paragraph (a) if (1) "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client" and (2) "each affected client gives informed consent, confirmed in writing." I will address these criteria one at a time.

### A. Rule 1.7(b)(1): Providing Competent and Diligent Representation

The initial question is whether the lawyers at Rochester FPD who are representing Client A can "reasonably believe[]" that they can "provide competent and diligent representation" to Client A despite Buffalo FPD's concurrent representation of Client B in the Second Circuit. In my professional opinion, they can form such a reasonable belief, for several reasons. ████████████████████████████████████████████ econd, although the Federal Public Defender W.D.N.Y. is a single "law firm," see Rule 1.0(h) (defining "law firm" to include "a government law office"), the Rochester FPD has never met or communicated with Client B, so the lawyers at Rochester FPD have no emotional connection to Client B and do not possess any of his confidential information. Third, Client A and Client B are represented by lawyers in separate physical offices, so Client A's lawyers do not have to see Client B's lawyers on a daily basis at work. Fourth, Client B's habeas corpus matter pending in the Second Circuit is factually unrelated to Client's A's criminal charges, so advancing Client A's defenses is unlikely to impede or undermine Client B's case factually or legally. Thus, in my opinion, the lawyers at Rochester FPD can reasonably believe that they can provide competent and diligent representation ████████

The related question is whether the lawyers at Buffalo FPD who are representing Client B can "reasonably believe[]" that they can "provide competent and diligent representation" to Client B in his habeas matter despite Rochester FPD's concurrent representation of Client A. Of course, if the Second Circuit permits the lawyers for Client B to withdraw from representing him, then the conflict will evaporate and it will be unnecessary to address whether they could competently and diligently represent Client B. But in any case, in my opinion they can reasonably believe that they can provide competent and diligent representation, because Rochester FPD has no plan or reason to challenge or interfere with Client B's habeas matter, which is unrelated to Client A's criminal

/

case. Thus, even if the motion to withdraw were for some reason to be denied, I see no reason that the lawyer at Buffalo FPD would suffer an adverse impact on his or her competence or diligence simply because a different office of the Federal Public Defender of W.D.N.Y. ▮▮▮▮

## B. Rule 1.7(b)(4): Obtaining Informed Consent

The next question is whether the lawyers at Rochester FPD and Buffalo FPD have obtained informed consent to the conflict. In my professional opinion, they have. Rule 1.0(j) defines "informed consent" as follows:

> "Informed consent" means an agreement by a person to a proposed course of conduct after the lawyer has communicated information adequate for the person to make an informed decision, and after the lawyer has adequately explained to the person the material risks of the proposed course of action and reasonably available alternatives.

Client A and Client B have each been advised by *Curcio* counsel, have appeared before the Court with their *Curcio* counsel for allocution, and have already consented in writing to the conflict pursuant to Rule 1.7(b)(4). The content of the communication necessary to obtain informed consent varies from case to case, but here the representation by independent *Curcio* counsel and Judge Siragusa's allocution of Client A and Client B ensure that each client's consent is indeed "informed" within the meaning of Rule 1.7(b)(4). In addition, the Court's allocution ensures that the consent is "informed" because the aim of the allocution is to ensure that each client's consent meets the Sixth Amendment's requirement of a knowing and voluntary waiver.

Pursuant to Rule 1.7(b)(4), the lawyers for Client A and Client B have also confirmed their Clients' consent in writing by securing an executed letter confirming consent and by putting their consent on the record before Judge Siragusa. Both methods satisfy the requirement that consent to a conflict be "confirmed in writing" see Rule 1.0(e) (defining "confirmed in writing" to include both a writing from the person to the lawyer confirming consent, and a statement by the person made on the record in a proceeding before a tribunal).

To repeat, if Buffalo FPD is permitted to withdraw from continuing to represent Client B, then the entire "differing interests" conflict under Rule 1.7(a)(1) will evaporate. And no conflict will arise under Rule 1.9(a), which prohibits a lawyer from representing a client whose interests are "materially adverse" to a former client that the lawyer has previously represented in the same or a substantially related matter, because Client A's criminal matter is not substantially related to Client B's habeas matter. Thus, Rule 1.9(a) will not be implicated if Buffalo FPD withdraws from representing Client B.

## C. Rule 1.10(d): Non-Consentability Is Not Imputed

A related question is whether different lawyers in the same law firm may ethically represent conflicting clients if the conflict would be non-consentable for one lawyer alone. In other words, if an individual lawyer could not simultaneously represent both Client A and Client B in these circumstances, may different lawyers from the firm simultaneously represent those clients?

Rule 1.7(b)(3) addresses conflicts that arise among parties to the same proceeding. It provides that a lawyer may represent a client despite a concurrent conflict of interest if, among other things, "(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Thus, a lawyer may not represent two clients in the same proceeding before a tribunal if one of the clients is asserting claims against the other client (such as a cross-claim by one defendant against another defendant). Under Rule 1.7(b)(3), such a conflict would be non-consentable. Is that sufficiently like the situation before the Court so that the conflict here is also non-consentable? In my opinion, the conflict here — different teams of lawyers in different offices the same firm representing conflicting clients in different proceedings in different courts — is not like the conflict prohibited by Rule 1.7(b)(3). The conflict here is consentable.

However, in the Annotations to Rule 1.7(b)(3) in the most recent edition of my treatise, Roy D. Simon & Nicole Hyland, SIMON'S NEW YORK RULES OF PROFESSIONAL CONDUCT ANNOTATED (Thomson Reuters, 19[h] ed. 2017), the following passage appears at p. 412:

> Because criminal defendants cannot file counterclaims against the People in the same proceeding, and because co-defendants who are being tried together in a criminal matter cannot file formal cross-claims against each other, Rule 1.7(b)(3) has no application in criminal cases. But ***a lawyer who attempted to represent codefendants who were blaming each other (or where either one was blaming another client of the same lawyer) would have a severe conflict that would probably be non-consentable under Rule 1.7(b)(1)***. A lawyer must satisfy *every* provision of Rule 1.7(b) for a conflict to be consentable, not just one provision. [Bold emphasis added.]

For three reasons, I do not think that this passage renders the conflict here non-consentable under Rule 1.7(b)(1) (the provision regarding competent and diligent representation).

First, my book talks about a "lawyer," not about a law firm. The conflict might well be non-consentable if the same lawyer were representing Client A at trial and Client B in the Second Circuit, but that is not the case. Client A's team of lawyers is different from Client B's team of lawyers, and no lawyer is common to both teams. The teams are entirely separate.

Second, the passage quoted from my book says the conflict would "probably" be non-consentable, not definitely. My intent is to explain that such a conflict would "usually" be non-consentable, which is more accurate than "probably." Since this is not the usual situation — this is not one lawyer in one case blaming one client while representing another client — the non-consentability should not be imputed to the firm. Informed consent by each client thus avoids imputation and cures the conflict.

Third, even if one lawyer in a firm has a non-consentable conflict, Rule 1.10(d) allows a client to consent to another lawyer in the firm to handle the matter if that other lawyer can meet the tests under Rule 1.7(b)(1). Rule 1.10(d) states:

> (d) A disqualification prescribed by this Rule may be waived by the affected client or former client under the conditions stated in Rule 1.7.

In my opinion, each team of lawyers can meet the tests of Rule 1.7(b)(1), so each client (Client A and Client B) has the right to waive the imputation of the conflict even if the underlying conflict would be non-consentable for a single lawyer. This is the import of the well-reasoned opinion in N.Y. State 975 (2013). In Opinion 975, the Committee noted that Rule 1.7(b)(3) categorically prohibits waiver of a conflict when a single lawyer represents both sides in the same matter. But "such unwaivability is not imputed by Rule 1.10(a)." Opinion 975 went on to say:

> 18. The conflict will not be waivable ... unless the lawyers on both sides of the litigation ... each reasonably believe that they can "provide competent and diligent representation" to their respective clients. Rule 1.7(b)(1). ***If the lawyers work in separate offices rather than in a common location, have little interaction, and do not share files, it may be more likely that both lawyers could reasonably form that belief.*** But each such conflict would have to be evaluated on its own facts and circumstances. [Emphasis added.]

Opinion 975 thus recognized that while a *conflict* is imputed throughout the firm, the *non consentability* is not necessarily imputed, especially where lawyers work in separate offices, have limited interaction, and do not share files. Here, the "facts and circumstances" are that the conflicting clients are represented by separate teams, working in separate offices, litigating in different courts, and maintaining separate files that they do not share with each other. In addition, Client A's matter is unrelated to Client B's matter. In my opinion, therefore, the fact that the conflict here would be non-consentable for a single individual attorney does not make the conflict non-consentable for the firm as a whole, and the conflict here is waivable (*i.e.*, consentable) if the clients give informed consent, as they have each done in writing after being advised by their own independent counsel.

## Conclusion

In my professional opinion, in the unusual circumstances before the Court, the conflict here is consentable. If the you or the Court would like me to follow up on this opinion, I will be happy to do so.

Sincerely,

Roy D. Simon
Legal Ethics Advisor to Law Firms
Distinguished Professor of Legal Ethics Emeritus