UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  | 17-cr-6016 |
| UNITED STATES, |  | 17-cr-6017 |
|  | *Plaintiff* |  |
| v. |  | Memorandum in Opposition to the OCME's Request to Modify the Non-conformity Order |
| RICHARD LEON WILBERN, |  |  |
|  | *Defendant.* |  |

In response to defendant Richard Wilbern's *Brady* request for disclosure of "all non-conforming events" at the Office of the Chief Medical Examiner of the City of New York [hereinafter OCME] United States Magistrate Judge Jonathan W. Feldman ordered the government to disclose the data and materials to defense counsel (17-cr-6016, DI 63; 17-cr-6017, DI 87). The Order directed disclosure of the non-conformity reports from 2011 through 2017 involving OCME employees who performed any work on or testing of the DNA evidence in the case. The Court also directed the government to notify the Court "immediately" if "OCME refuse[s] to produce to the government the data subject to [t]his order" (17-cr-6016, DI 63, at 2; 17-cr-6017, DI 87, at 2).

Circumventing the government's role in this case, Florence Hutner, General Counsel for OCME, faxed a letter requesting that the Court order protection of the documents to be produced and, if the Court failed to do so, indicated that it would "redact the non-conformity reports relating to cases other than this proceeding to protect information relating to other criminal defendants and OCME analysts not involving with the testing and analysis in this case" (*see* 17-cr-6016, DI 67, Enc. [hereinafter "OCME Letter"]; 17-cr-6017, DI 95, Enc. (same)).

The OCME's request should be rejected. First, the OCME is not a litigant in this case, and has not moved to intervene in this case. Any issues should be raised by the government. However, the government believes that it has no interest in pursuing the issues raised by the OCME. Second, the OCME's request is merely a subterfuge to ensure that the veil of secrecy that exists as to the inner workings of its forensic DNA lab remains in place. In light of the ever growing number of scandals taking place involving forensics laboratories around the country – in addition to the OCME – the Court should insist that its order be complied with and that

the non-conformity reports be disclosed, unredacted, to ensure the protection of Mr. Wilbern's due process rights. Finally, contrary to the OCME's argument, the deliberative process privilege does not apply to the non-conformity reports. Even if the privilege applied, disclosure is not barred given that the reports were seemingly incorporated into the conclusions reached by the laboratory. The OCME has not complied with the Court's Order; as a result the Court should order disclosure of the non-conformity reports forthwith. Alternatively, the Court should order the OCME's General Counsel to appear to explain, and submit to cross-examination, as to why the OCME should be excused from complying with the Court's Order.

## BACKGROUND

Mr. Wilbern is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (17-cr-6016, DI 6). In a separate two-count indictment he is also charged with credit union robbery, in violation of 18 U.S.C. §§ 2113(a) & (e), and murder with a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & 924(j)(1) (17-cr-6017, DI

15). These allegations arose from the 2003 robbery of the Xerox Federal Credit Union, located in Webster, New York.

In Early February of 2018, Mr. Wilbern demanded the disclosure of *Brady* and *Giglio* material in addition to discovery pursuant to FED.R.CRIM.P. 16(a) (*see* 17-cr-6016, DI 25 at 3-8; *see also* 17-cr-6017, DI 39 at 3-8). Mr. Wilbern also requested the government to confirm beyond the discovery materials already provided that it did not intend to rely upon expert testimony outside of the areas it had previously identified, and he requested additional material related to DNA testing be provided in compliance with Rule 16(a)(1)(G) (*see* 17-cr-6016, DI 25 at 8-10; *see also* 17-cr-6017, DI 39 at 8-10). On March 6, 2018, the Court ordered the government "to provide all Brady material in its possession to the defense no later than the close of business on Friday, March 9, 2018. Thereafter, the Government is to provide the defense additional Brady material on an on-going basis as it becomes aware of such additional information" (*see* 17-cr-6016, DI 28 [hereinafter "*Brady* Order"]; *see also* 17-cr-6017, DI 44 (same)). Months later, in July of 2018, Mr. Wilbern again sought the disclosure of *Brady* and

4

discovery materials, in particular certain non-conforming event reports of the OCME (*see* 17-6016, DI 60 at 3; *see also* 17-cr-6017, DI 80 at 3). As was fully aired during oral argument on October 23, 2018, the parties had attempted to reach an agreement regarding the disclosure of these materials however the OCME refused to release the non-conforming event reports aside from those involving Craig O'Connor and Michele Egerman who rendered final conclusions as to the DNA testing in the case at bar. In addition, the OCME refused to release even these materials unless the defense agreed to a protective order. *Id.* The OCME supplied its proposed language which referred to another defendant in an apparently unrelated New York State Case. This information and the proposed order was the subject of Mr. Wilbern's July 2018 motions (*see* 17-6016, DI 60 at 3 and Exhibit A (proposed protective order); *see also* 17-cr-6017, DI 80 at 3 and Exhibit A (same)).

After reviewing Mr. Wilbern's *Brady* request, the government's response and arguments made during a hearing, at oral argument on October 23, 2018, the Court ordered the government to "obtain from OCME the requested 'non-conforming event' data" (17-cr-

5

6016, DI 63, at 2; 17-cr-6017, DI 87 at 2). Additionally, the government was directed to disclose the data and materials to the defense. The Court went on to require the government to notify the Court "[s]hould OCME refuse to produce to the government the data subject to [t]his order" (17-cr-6016, DI 63, at 2; 17-cr-6017, DI 87 at 2). The written version of the Order was entered on November 5, 2018 (17-cr-6016, DI 63; 17-cr-6017, DI 87).

On November 21, 2018, more than one month after the Court issued its oral Order following oral argument and more than two weeks after the written version of the Order was entered, Florence Hutner, General Counsel to the OCME, circumvented the Court's order by moving the Court, through an e-mailed letter, for a protection order on the documents the government was directed to produce (*see* OCME Letter). According to the OCME it identified 459 pages of nonconformity reports that must be produced, however the OCME insisted that before the records would be produced a protection order was needed to ensure "open and honest communication to expose even the most minor of errors, and in protecting its employees' personnel records" (*see* OCME Letter, at

6

3). This, according to the OCME, "outweigh[s] any benefit in making the documents generally public" (*see* OCME Letter, at 3). The OCME indicated that, if the Court denies its request for a protection order, it will take it upon itself to redact the documents it has been ordered to produce (*see* OCME Letter, at 3).

**ARGUMENT**

## I.   The OCME Cannot Intervene in this Case.

The OCME is a governmental agency within New York City that plays a role in public health and the criminal justice system. *See* https://www1.nyc.gov/site/ocme/about/about-ocme.page (last accessed 12/4/18). Though the government sought the OCME's assistance in this case, as they have with other law enforcement agencies, the OCME is not a party to this case. Rather than comply with the Court's orders, in any fashion, the OCME took it upon itself to ask the Court to modify the non-conformity order. The OCME's actions conflict with the Court's order and, if allowed, would set a dangerous precedent that would allow any party to intervene in a criminal prosecution.

Unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not provide a mechanism for non-parties to intervene in criminal cases. *See United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008). That said, motions to intervene in criminal cases are not uncommon when a non-party has an interest and would not otherwise be heard. *Id.* (discussing motions to intervene in order to assert the public's First Amendment Right of access to criminal proceedings); *see also* Motion to Intervene, *United States v. Leonardo*, 129 F.Supp.2d 240 (W.D.N.Y. 2001) (No. 01-cr-6001) (media outlets WORK-TV and R-News seeking to intervene). That is, the intervener has neither the plaintiff nor the defendant to represent its interests. These circumstances are not present in Mr. Wilbern's case given that the government can, and was directed to, communicate the OCME's interests to the Court.

The non-conformity order directed what should happen in the event that the OCME could not, or would not, produce the non-conformity reports. The government was directed to notify the Court if this situation arose (17-cr-6016, DI 63, at 2; 17-cr-6017, DI 87 at 2). Rather than attempt to informally inject itself into the

8

proceedings, the OCME should have informed the government of its issue(s) with the non-conformity order and allowed the government to bring the matter to the Court's attention.

The government routinely advocates on behalf of third parties in criminal cases. For example, child exploitation victims do not file their own motions seeking restitution. Rather, the requests are made through the government. *See* Govt's Sentencing Statement at 1, *United States v. Picone*, No. 17-cr-85, 2018 WL 4941782 (E.D.N.Y. Oct. 12, 2018); Govt's Supp. Sentencing Statement, *United States v. Lundquist*, No. 10-cr-417 (N.D.N.Y. Aug. 13, 2014); *see also* 18 U.S.C. § 3664(d)(1) ("Upon the request of the probation officer, but not later than 60 days prior to the date initially set for sentencing, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution.").

Allowing governmental agencies to circumvent the United States Attorney's Office to challenge this Court's orders during a

criminal prosecution opens the door to allow any organization or individual to challenge a disagreed-with order. Such precedent would invite members of the community to challenge pre-trial release/detention orders. Such precedent would open the door for crime victims to file their own pretrial motions. Such precedent could lead to the general public seeking direct participation in criminal prosecutions.

To date, the government's only comment regarding the OCME's e-mailed letter is, "I don't have a dog in that fight." E-mail from Douglas Gregory, AUSA, to Anne Burger, AFPD (Nov. 21, 2018, 11:16 P.M.) (on file) (pertaining to defense counsel's request to file a response to the OCME's letter). Given that the government has taken no position on this matter, and that the OCME has identified and compiled the documents subject to the non-conformity disclosure Order, the Court should direct the government to have the OCME produce the documents, forthwith, in unredacted format.

## II. The OCME's request would implicate Mr. Wilbern's due process rights by maintaining the veil of secrecy over the laboratory's work.

The OCME claims that disclosure of the non-conformity reports "would likely have a chilling effect on the free exchange of information within the [OCME's] laboratory" (OCME Letter, at 2). It is difficult to fathom that counsel for a public laboratory genuinely believes that OCME scientists will conceal information regarding their errors in analysis and testing from the lab itself unless they are ensured that their errors will not be revealed to the outside world. If true, the need for disclosure of the non-conforming event reports is even more compelling. Far more likely, regardless of whether the OCME is required to comply with the Court's Order, these scientists will report such errors internally as they are no doubt required to do or face discipline and/or dismissal. The OCME's actual motivation in failing to comply with the Court's Order is to perpetuate a veil of secrecy over its conduct and functioning. Yet, veils of secrecy in the operation of laboratories used to analyze forensic data have resulted in scandals around the country. *See, e.g.,* Samantha Ketterer, *Houston crime lab fires investigator after alleged testing policy violation*, HOUSTON CHRON.,

Oct. 26, 2018, *available at,*

https://www.chron.com/news/houston-texas/

houston/article/Houston-forensic-lab-fires-investigator-after-

13338820.php; S.P. Sullivan, *More than a thousand drug cases will*

*be tossed after N.J. State Police lab scandal,* NJ COM, May 10, 2018,

*available at,* https://www.nj.com/politics/ index.ssf/2018/05/

judge_gives_ag_deadline_for_dealing_with_drug_case.html; Gary

Craig, *Former Monroe County DA Green, leads agency accused in*

*DNA Controversy,* DEM. & CHRON., June 1, 2018, *available at,*

https://www.democratandchronicle.com/story/news/2018/06/01

/ny-division-criminal-justice-services-allegedly-falsified-dna-mike-

green-brian-gestring/663103002/; Tom Jackman, *Massachusetts*

*prosecutors to throw out 8,000 convictions in second drug lab*

*scandal,* WASH. POST, Dec. 28, 2017, *available at,* https://

www.washingtonpost.com/ news/true-crime/wp/2017/

12/28/massachusetts-prosecutors-to-throw-out-8000-convictions-

in-second-drug-lab-scandal/?utm_term=.aa2884febb04; NYS OIG,

REPORT OF INVESTIGATION OF THE MONROE COUNTY PUBLIC SAFETY

LABORATORY (June 2012) (finding amongst other problems,

deficiencies in the way in which the lab adequately reviewed a

biologists past work).

The OCME, a publicly-funded laboratory, has inexplicably

shown a pattern of secrecy in matters ranging from its functioning

to the scientific foundations of its testing procedures. For example,

the OCME created a software program, FST, to interpret

complicated DNA mixtures. The OCME repeatedly refused to release

its source code for FST even in connection with *Daubert* challenges

to its admissibility in criminal cases. Instead, the lab claimed that it

should be kept secret to protect its economic value. Aislinn Kloss, *A

Possible Alternative to Secretive DNA Analysis*, November 27, 2017,

Yale Law School Media Freedom & Access Clinic

https://law.yale.edu/mfia/case-disclosed/possible-alternative-

secretive-dna-analysis (last accessed 12/5/2018). Yet it does not

appear that the lab has ever sought to monetize the tool. Ultimately,

the lab publicly released the software's source code in the face of a

court ordered lifting of a protective order in *United States v.

Johnson*, 15-cr-565 (S.D.N.Y.). Not long after the code's release, the

OCME announced that it was ceasing its use of FST. Lauren

13

Kirchner, *ProPublica Seeks Source Code for New York City's Disputed DNA Software*, PROPUBLICA (Sept. 25, 2017), https://www.propublica.org/article/propublica-seeks-source-code-fornew-york-city-disputed-dna-software [https://perma.cc/MR26-SS26] (last accessed 12/5/2018).

The OCME was similarly secretive with regard to the validation studies underlying its low copy number DNA testing at issue in the case at bar. The lab refused to release its validation studies for the low copy number DNA testing for many years; the lab yielded only when faced with the prospect of being ordered to do so in connection with litigation regarding the testing procedure's admissibility in a criminal case. The excuse offered by Timothy Kupferschmid, Director of the Forensic Biology section of the OCME, in support of maintaining the secrecy of the validation studies was "that if we were to release them publicly it would draw confusion among the general public. Misunderstanding." *Stajic v. City of New York*, 16-cv-1258 (S.D.N.Y.), Document 108-3 at 22. Mr. Kupferschmid also admitted that he had been advised by attorney Florence Hutner not to release the studies. *Id.*

14

The OCME has demonstrated that it will go to great lengths to maintain its veil of secrecy. Several years ago, a senior OCME scientist, Dr. Marina Stajic, joined two other members of the New York State Commission on Forensic Science ["CFS"] and voted in favor of a measure requiring the OCME to disclose the low copy number DNA testing validation studies to the public or, in the alternative, to the CFS members themselves. The measure failed. In the aftermath, Dr. Stajic's employment with the lab was terminated. Attorney Florence Hutner repeatedly resisted the efforts of the Commission's Chair, Michael Green, to determine if Dr. Stajic had been terminated for taking a position against the OCME in seeking the release of its validation studies. Commissioner Green's frustration with the OCME's culture of secrecy is evident in his April 22, 2015 and June 29, 2015, letters to the New York State Inspector General asking for an investigation into the OCME's conduct toward Dr. Stajic. *See* Exhibit A. In his first letter, Commissioner Green reports that

> [r]ecent events at the OCME, which have also been the
> subject of a report by your office, have frequently put Dr.
> Stajic in a difficult position. Her role on the CFS may

15

place her in direct conflict with the OCME. A concern was voiced during the last executive session regarding the conflict and Mr. Kupferschmid and Ms. Hutner did nothing to dispel that Dr. Stajic's change in employment status was in retaliation for her role as a member of the CFS.

*Id.*

Commissioner Green persisted in his efforts to obtain the help of the Inspector General in his June 2015 letter:

If, in fact, Dr. Stajic was fired for taking a position on a policy with which Mr. Kupferschmid disagreed, such conduct arguably could rise to the level of 'misconduct substantially affecting the integrity of forensic science results...'

*Id.*

The OCME suggests that disclosure of the non-conformity reports is unnecessary because of internal checks, and because their work is overseen through its accrediting bodies, including – interestingly - the  CFS (OCME Letter, at 1-2). We do not dispute that "internal oversight mechanisms should be reinforced by external oversight." Alicia M. Hilton, *Guilty Until Proven Innocent: Evidence Tampering, Drug and Crime Lab Misconduct and Law*

16

*Enforcement Ethics*, 65 RUTGERS L. REV. COMMENT. 32, 36 (2012). Nonetheless, we cannot rely on forensic laboratories to police themselves.

Even within the agency charged with oversight of the OCME problems have come to light. Brian Gestring, the former forensics director of the New York States Division of Criminal Justice Services [hereinafter DCJS] claims that Michael Green, the Executive Commissioner of DCJS and Chair of the CFS, provided false information to a state forensic science commission. Brendan J. Lyons, *Fired DCJS director accuses commissioner of misleading oversight panel*, TIMES UNION, June 1, 2018, *available at*, https://www.timesunion.com/ news/article/Fired-DCJS-director-accuses-commissioner-of-12961241.php. He also claimed that Green failed to disclose "that the agency had three 'catastrophic' cases in the past year in which it misidentified suspects who had been linked to crimes through DNA." *Id.* Though DCJS does not perform the laboratory analysis itself, this is significant, according to Gestring, because it is DCJS "that makes the identification once the lab analysis is completed." *Id.*; *see also* Craig, *Former Monroe*

*County DA Green, leads agency accused in DNA controversy*
(discussing how Green minimized DCJS' role in identifying a
suspect through the DNA process).

After raising the issue in an "open letter" to the Commission,
Gestring and another member of the Committee who wished to
discuss reporting non-conformances in the state databank, were
removed from the Commission. Brian Gestring, *Letter: Mistakes
abound at state DNA databank*, TIMES UNION, July 8, 2018, *available
at*, https://www.timesunion.com/opinion/article/Letter-Mistakes-
abound-at-state-DNA-databank-13058507.php. The Commission
never discussed the issues raised by Mr. Gestring. *Id.*

The OCME's averments that the non-conforming event reports
cannot be disclosed, or should be redacted before disclosure, only
serves as a tool to deceive the Court, the defense and further
promulgate the myth that forensic science is inscrutable and
infallible. *See* Hilton, 65 RUTGERS L. REV. COMMENT. at 36. One way
to bring to light to the problems that may exist in the OCME in the
context of Mr. Wilbern's defense is to allow the defense access to the

unredacted non-conformity reports. As former Associate Justice Louis D. Brandeis concluded "[s]unlight is said to be the best of disinfectants." Other People's Money 62 (1933)).

Thus, it is necessary to lift the veil as to the non-conforming events that have taken place within the OCME's low copy number DNA lab by those analysts who worked on the evidence in this case. The Court should compel the OCME to comply with the Order.

## III.   The deliberative process privilege does not preclude disclosure of the non-conformity reports.

The OCME relies on the deliberative process privilege, also known as the official information privilege, to support its claim that disclosure would undermine candid discussion amongst employees of the OCME laboratory (OCME Letter, at 3 (citing cases)). Contrary to the OCME's averment, the deliberative process privilege does not apply to all internal communications within a governmental agency. Instead, the privilege applies to documents pertaining to the deliberative process associated with the development of governmental policies. *See Grand Cent. Partnership v. Cuomo*, 166

F.3d 473, 482 (2d Cir. 1999). Given that the non-conformity reports
are not produced in the development of agency policy, the privilege
should not apply.

Assuming, *arguendo*, that the Court finds that the privilege
applies because the non-conformity reports relate to a governmental
decision, i.e., the report of the DNA analysis, it does not mean that
the privilege bars its disclosure. *National Council of La Raza v.
Department of Justice*, 411 F.3d 350, 356 (2d Cir. 2005). Disclosure
can be required if the agency adopted or incorporated by reference
documents into the final decision. *Id.* "In such a circumstance, the
document loses its predecisional and deliberative character, and
accordingly, the deliberative process privilege no longer applies." *Id.*
Here, the non-conformity reports have likely been adopted into such
final reports. As such, they have lost their predecisional character
and should be disclosed.

Accordingly, the deliberative process privilege does not
preclude disclosure of the non-conformity reports.

20

## CONCLUSION

The OCME has identified 459 pages of non-conformity reports related to lab personnel who have worked on the DNA in Mr. Wilbern's case. There is no basis for the OCME to not comply with this Court's order and turn over the non-redacted reports to the government, forthwith. The reports have been identified, and are readily available. Failure to disclose is merely another example of a government forensics laboratory struggling to conceal problems within their lab. Ordering compliance will lift the veil of secrecy and enable to the defense to effectively defend Mr. Wilbern. And finally, contrary to any arguments made by the OCME, the deliberative process privilege does not apply to the non-conformity reports given that the reports do not pertain to policies made by the OCME.

Accordingly, the OCME should be ordered to turn over the reports forthwith. Alternatively, the Court should order the General Counsel to appear at a hearing for questioning under oath, as to why the OCME failed to comply with this Court's Order.

21

DATED:     December 5, 2018
           Rochester, New York


                         Respectfully submitted,


                         ___/s/Anne Burger_____
                         Anne Burger
                         Assistant Federal Public Defender
                         Federal Public Defender's Office
                         28 East Main Street, Suite 400
                         Rochester, New York 14614
                         585-263-6201
                         Anne_Burger@fd.org
                         Attorney for Richard Wilbern


                         Jay S. Ovsiovitch
                         Of Counsel


cc:   Douglas E. Gregory, AUSA (Via CM-ECF)
      Florence Hunter, Esq. (Via U.S. Mail)